IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GERALD R. HARDY,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 06-0687-WS-B |
| | ) |
| **JIM WALTER HOMES, INC.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiffs' Motion for Remand (doc. 24), in which plaintiffs request that this action be remanded to the Circuit Court of Mobile County, Alabama, with costs and attorneys' fees taxed against defendants pursuant to 28 U.S.C. § 1447(c). The Motion has been briefed and is ripe for disposition.[1]

**I.   Background.**

On or about October 13, 2006, plaintiffs Gerald R. Hardy and Bonnie Hardy (the "Hardys") filed a Complaint against defendants Jim Walter Homes, Inc. ("JWH") and Walter Mortgage Company ("WMC") in the Circuit Court of Mobile County, Alabama. The Complaint asserted a variety of state-law causes of action arising from alleged delays, substandard building practices, and harassing conduct allegedly utilized by defendants in connection with financing and constructing a house for plaintiffs in Theodore, Alabama.[2] Of particular significance for

---

[1]   Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2]   In their entirety, plaintiffs' causes of action consisted of the following: (i) a declaratory judgment claim seeking a declaration that both a building agreement (between plaintiffs and JWH) and financing agreements (between plaintiffs and WMC) are void for failure of consideration (Count One); (ii) a claim for fraud in the inducement, alleging that defendants misrepresented the construction commencement date and JWH's capabilities for the purpose of inducing plaintiffs to enter into the agreements (Count Three); (iii) a claim for fraudulent

purposes of the instant Motion, Count One is a claim for declaratory judgment, requesting that the Court declare as follows: (a) that the consideration supporting construction and financing agreements between the Hardys and defendants failed its essential purpose and that performance is impossible and impractical; and (b) that those agreements "are void and are a nullity." (Complaint, at 3-4.)  With respect to the damages claims, the Complaint demands "compensatory and punitive damages against the Defendants, jointly and severally, in an amount not more than $74,000.00, plus costs" on claims of fraud in the inducement (Count Three) and reckless misrepresentation (Count Five).  The Complaint further demands "compensatory and punitive damages against [JWH] in an amount not more than $74,000.00, plus costs" on claims of fraudulent inducement (Count Four) and trespass (Count Seven).  With regard to plaintiffs' negligence/wantonness claim (Count Six), the Complaint demands "compensatory damages against [JWH] in an amount not more than $74,000.00, plus costs."  Finally, the Complaint demands judgment from WMC "in an amount not more than $74,000.00, plus costs," on the wrongful foreclosure claim (Count Eight).

On October 17, 2006, defendants filed a Notice of Removal (doc. 1), removing this action to this District Court on grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332. Defendants posited that there was complete diversity between plaintiffs (who are citizens of Alabama) and defendants (with JWH being a Florida citizen for diversity purposes and WMC being a citizen of Delaware and Texas).  As for the $75,000 amount-in-controversy threshold, defendants maintained that it was satisfied, notwithstanding plaintiffs' express limitation of their

---

inducement against JWH, alleging that JWH misrepresented the construction commencement date and its capabilities "for the purpose of inducing Geraldn [*sic*] Hardy into entering an arbitration agreement" (Complaint, ¶ 31) (Count Four); (iv) a claim for reckless misrepresentation alleging that defendants recklessly misrepresented the construction commencement date and JWH's capabilities for the purpose of inducing plaintiffs to enter into the agreements (Count Five); (v) a claim for negligence or wantonness against JWH, alleging various acts and omissions that caused unreasonable delay in the construction process (Count Six); (vi) a claim for trespass against JWH, alleging that JWH intentionally trespassed on plaintiffs' land to distress and intimidate them (Count Seven); and (vii) a claim for wrongful foreclosure against WMC, alleging that WMC failed to provide proper notice of default or foreclosure to plaintiffs before commencing foreclosure proceedings (Count Eight).  Also recited was a claim for preliminary injunction (Count Two) which plaintiffs have since abandoned.

damages claims to $74,000, because (1) "[t]he pecuniary consequence to JWH and WMC of the declaration sought would be the forfeiture of over $173,172.00 in principal and interest"; (2) the value of plaintiffs' damages claims should be aggregated for jurisdictional purposes, yielding a total amount in controversy far exceeding the requisite threshold; and (3) the $74,000 cap set forth in the Complaint constituted fraudulent pleading of jurisdictional facts to avoid removal. (Doc. 1.)

This case remained in this District Court for fully six months before plaintiffs finally filed a Motion to Remand (doc. 24) on April 18, 2007. In the interim, plaintiffs unsuccessfully opposed JWH's Motion to Compel Arbitration (doc. 8), which the Court granted via Order (doc. 19) entered on January 18, 2007. The effect of the January 18 Order was that plaintiff Gerald Hardy was ordered to proceed to arbitration with respect his claims against defendant JWH; provided, however, that the January 18 Order exempted Mr. Hardy's causes of action against defendant WMC, as well as all of plaintiff Bonnie Hardy's claims against any defendant, and ordered all of those claims to proceed in this forum.[3] Although a motion to remand for want of subject matter jurisdiction may be raised at any time, the timing of plaintiffs' filing suggests that it was motivated by a desire to erase the unfavorable ruling on the arbitration issue.[4] Be that as it may, the Motion to Remand is predicated exclusively on plaintiffs' contention that the amount-in-controversy threshold is not satisfied here, such that diversity jurisdiction under 28 U.S.C. §

---

[3] Unfortunately, the intervening five months have seen the parties take no material steps to move forward with the prosecution of Mr. Hardy's claims against WMC, or Ms. Hardy's claims against any defendant. While some blame for this inactivity rests with this District Court because no new deadline for the parties' Rule 26(f) Report was entered even after the January 18 Order directed that such a deadline be set, it is fundamentally the plaintiffs' responsibility to prosecute their claims. The Court is aware of no valid reason for this action to have remained completely dormant during this protracted span.

[4] This conclusion is reinforced by the fact that mandatory monthly status reports filed in the three-month interval between the January 18 Order compelling arbitration and the April 18 Motion to Remand confirm that the parties have made absolutely no progress in moving forward with arbitral proceedings. Indeed, the arbitration process ground to a halt when plaintiffs' counsel failed to respond for three months to JWH's requests that plaintiffs provide a list of potential arbitrators whom they deemed satisfactory. (*See* docs. 20, 22, 26.) After this considerable delay, plaintiffs proposed an arbitrator contemporaneously with filing their Motion to Remand aimed at undoing the order compelling arbitration.

1332 is non-existent. In particular, plaintiffs submit affidavits averring that they "do not currently seek nor will [they] accept more than $74,000.00 in damages in this case, even if a jury verdict exceeds that amount." (Doc. 25, at Exhs. B & C.) Plaintiffs also rely on a letter from WMC to plaintiffs' counsel dated May 15, 2006, wherein WMC states that plaintiffs owe it the sum of $33,954.80, plus additional per diem charges, for the money they borrowed to purchase the property on which their home was to be built. (*Id.* at Exh. A.)

## II.     Analysis.

### *A.     Legal Standard for Motion to Remand.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

There being no federal question presented in the Complaint, defendants predicated removal on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.*; *see Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship

and an amount in controversy exceeding $75,000"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted). Section 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.31 (11th Cir. 2007); *Triggs*, 154 F.3d at 1287. However, mere diversity is not sufficient; rather, "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison*, 228 F.3d at 1261. The amount in controversy is assessed as of the date of removal. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."); *Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal.").[5]

> **B.    Application of 28 U.S.C. § 1332.**
>> *1.    Plaintiffs Have Limited their Damages Claims, in toto, to $74,000.*

Plaintiffs insist that the $75,000 threshold is not satisfied in this case, inasmuch as each of the six damages counts set forth in the Complaint specifically caps the damages sought in the amount of $74,000, plus costs. To foreclose defendants' attempt to multiply the $74,000 limitation across each of the six damages claims to compute the total amount in controversy, plaintiffs also point to their clarifying affidavits submitted with their Motion to Remand, wherein they aver that they do not seek and will not accept more than $74,000 in damages for the case as

---

[5] Thus, for example, the dismissal of Count VIII post-removal is jurisdictionally irrelevant. That cause of action is properly considered in the jurisdictional analysis because it was an active, pending claim at the time of removal. *See Everett*, 460 F.3d at 822 ("Claims present when a suit is removed but subsequently dismissed from the case thus enter into the amount-in-controversy calculation."); *Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1291 (11th Cir. 2000) (post-removal events that may reduce amount in controversy do not oust district court's jurisdiction).

a whole.[6]

     Because a plaintiff is the master of his own complaint, his decision to limit his damages below the jurisdictional threshold is ordinarily sufficient to ward off involuntary exile to federal court.  Indeed, where a plaintiff specifically pleads a damages amount below the jurisdictional threshold, the Eleventh Circuit has found that such a pleading "deserves deference and a presumption of truth.  We will not assume - unless given reason to do so - that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case."  *Burns*, 31 F.3d at 1095.  If a defendant removes the case to federal court, notwithstanding the plaintiff's specific pleading of damages below the jurisdictional minimum, then in order to avoid remand the "defendant must prove to a legal certainty that plaintiff's claim must exceed" the jurisdictional amount.  *Id.*  Thus, to secure a federal forum, a removing defendant must establish that "an award below the jurisdictional amount would be outside the range of permissible awards

---

[6] Under firmly entrenched Circuit precedent, these affidavits are properly considered to clarify the amount in controversy at the time of removal. *See, e.g., Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (authorizing district courts to consider post-removal evidence in assessing removal jurisdiction, with the proviso that post-petition affidavits are allowable only if relevant to ascertaining jurisdictional facts at the time of removal); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (crediting plaintiff's counsel's representation in motion to remand that plaintiff does not seek and would not accept damages in excess of jurisdictional amount); *Brooks v. Pre-Paid Legal Servs., Inc.*, 153 F. Supp.2d 1299, 1300-01 (M.D. Ala. 2001) (observing that courts routinely give effect to binding, post-removal stipulations).  Contrary to defendants' contention, allowing these affidavits will not prejudice defendants, inasmuch as the affidavits do nothing more than reinforce and clarify what the Complaint already says, to-wit: that plaintiffs seek a maximum of $74,000 in damages in this action.  These circumstances are plainly distinguishable from the authorities relied on by defendants in attempting to exclude the affidavits, as there is no reason to believe that plaintiffs filed them in an attempt to manipulate these proceedings, changing tack abruptly and concocting jurisdictional facts to limit their damages merely because this litigation took a turn for the worse.  *Compare Bullock v. United Ben. Ins. Co.*, 165 F. Supp.2d 1255, 1259 (M.D. Ala. 2001) (refusing to consider affidavits limiting damages below jurisdictional threshold where plaintiff had previously filed an unsuccessful motion to remand on fraudulent joinder grounds, such that her damage limitation was "a seemingly underhanded tactic"); *Brooks*, 153 F. Supp.2d at 1302 (decrying "plaintiffs who devilishly move to limit their damages and return to state court only after litigation has taken an unfavorable turn").  Accordingly, the Court will credit plaintiffs' averments that the total amount of damages they seek and will accept is capped at $74,000, exclusive of costs.

because the case is clearly worth more than [$75,000]." *Id.* at 1096.[7]  Faced with this daunting burden, defendants have failed to demonstrate that an award of less than $75,000 on plaintiffs' damages claims, in the aggregate, would not be permissible.

                2.      *Plaintiffs' Declaratory and Damages Claims Must Be Aggregated.*

Had plaintiffs brought damages claims and no others, the foregoing analysis would be conclusive. The jurisdictional minimum would not be satisfied and remand would be warranted. But plaintiffs did not limit their Complaint to causes of action seeking damages. In addition to their damages claims, the Hardys also bring a claim for declaratory relief (Count I), wherein they seek a judicial declaration that their construction and financing contracts with JWH and WMC "are void and are a nullity." (Complaint, at 4.) Defendants assert, and plaintiffs do not dispute, that the value of the damages claims must be aggregated with that of the declaratory judgment claim to determine the total amount in controversy for § 1332 purposes. *See, e.g., Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 585, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated"); *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) ("It is well settled that ... an individual plaintiff's multiple claims against a single defendant may be aggregated to determine diversity jurisdiction"); *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2nd Cir. 2006) ("Different state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount-in-controversy requirement."); *Klepper v. First American Bank*, 916 F.2d 337, 341 (6th Cir. 1990) ("It is well established that claims can be aggregated to satisfy the jurisdictional amount requirement."); *Finley v. George Weston Bakeries Distribution, Inc.*, 473 F. Supp.2d 105, 106 (D. Me. 2007) (similar); *Pollock v. Trustmark Ins. Co.*, 367 F. Supp.2d 293, 300 (E.D.N.Y. 2005) ("[A]ll the related and unrelated claims a single

---

      [7]      *See also Sapp v. AT & T Corp.*, 215 F. Supp.2d 1273, 1278 (M.D. Ala. 2002) (applying *Burns* to require removing defendant to prove to legal certainty that any recovery by plaintiff must exceed jurisdictional amount, where plaintiff expressly limited damages to amount below jurisdictional minimum); *Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp.2d 1271, 1274 (N.D. Ala. 2001) ("legal certainty" test is "strict" and is not satisfied unless removing defendant shows to a legal certainty that award below jurisdictional amount would be outside range of legally permissible outcomes).

plaintiff has against a single defendant may be aggregated to reach the jurisdictional amount.").[8] Therefore, the amount in controversy in this action is properly computed as the sum of the value of the damages claims and the value of the declaratory judgment claim. *See generally Raye v. Employer's Ins. of Wausau*, 345 F. Supp.2d 1313, 1315 (S.D. Ala. 2004) (adding $75,000 compensatory/punitive damages claims to claim for unpaid past and future medical benefits to determine total amount in controversy).

Now, in saying that the value of plaintiffs' claims must be aggregated for jurisdictional purposes, the Court does not find that those damages claims must be aggregated with each other. The law is clear that claims seeking essentially the same recovery under varying theories are not to be aggregated. *See Pollock*, 367 F. Supp.2d at 301 (no aggregation of "claims which seek the same damages in claims under varying theories"); *Gallo v. Homelite Consumer Products*, 371 F. Supp.2d 943, 947 (N.D. Ill. 2005) ("where two or more claims are alternative theories of

---

[8] Many of these authorities concern claims brought by a single plaintiff against a single defendant, whereas here the Complaint involves claims brought by two plaintiffs against two defendants. Given the specific circumstances of this case, that distinction matters not, inasmuch as multiple plaintiffs' claims to enforce a single title or right in which they have a common and undivided interest are properly aggregated. *See Everett*, 460 F.3d at 822 (when two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, their claims may be aggregated for purposes of the amount in controversy requirement); *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.6 (11th Cir. 2001) (similar); *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1280 (11th Cir. 2001) (similar); *Lucia v. Teledyne Continental Motors*, 173 F. Supp.2d 1253, 1259 (S.D. Ala. 2001) (similar); *Lutz v. Protective Life Ins. Co.*, 328 F. Supp.2d 1350, 1361 (S.D. Fla. 2004) ("[T]here are situations in which multiple plaintiffs have a unified, indivisible interest in some common fund that is the object of litigation, permitting them to add together, or "aggregate," their individual stakes to reach the amount in controversy threshold.") (citation omitted). Furthermore, courts have routinely allowed claims against multiple defendants to be aggregated for § 1332 purposes where those claims allege that defendants are jointly liable. *See, e.g., First Transit, Inc. v. City of Racine*, 359 F. Supp.2d 782, 785 (E.D. Wis. 2005) (plaintiff need not satisfy amount in controversy requirement against each defendant if defendants are jointly liable); *Lathem v. State Farm Mut. Auto. Ins. Co.*, 339 F. Supp.2d 767, 772 (S.D. Miss. 2004) ("Claims against two or more defendants can be aggregated for the purpose of attaining the jurisdictional amount, as a general proposition, if they are jointly liable to the plaintiff."). Because plaintiffs seek to hold defendants jointly liable for claims to enforce a right in which they have a common and undivided interest, those claims are properly aggregated. The parties have never argued otherwise, and this Court will not make their arguments for them.

recovery for the same harm, they may not be aggregated" for jurisdictional amount purposes). Defendants have not suggested that the damages claims actually seek different recoveries for different harms, nor have they proffered any legal argument why these damages claims should be aggregated with each other. In any event, plaintiffs' affidavits confirm that they seek a maximum of $74,000 from their damages claims *in toto*, so even if the damages claims were aggregated, $74,000 remains the appropriate valuation for Counts III through VIII, as a whole. Therefore, the appropriate methodology in applying § 1332 is to consider the value of the damages causes of action as totaling $74,000. That $74,000 valuation for the damages claims must be aggregated with the value of the declaratory relief sought in Count I to determine the total amount in controversy for jurisdictional purposes. *See Pollock*, 367 F. Supp.2d at 301 ("[C]laims under separate categories of recovery to which a plaintiff is entitled, compensatory, incidental, or punitive, for example, may be aggregated.").[9]

       3.     *Valuation of Declaratory Judgment Claim.*

Having determined that the value of plaintiffs' damages claims must be aggregated with that of their declaratory judgment claim for jurisdictional purposes, the obvious question is what value should be assigned to that declaratory judgment cause of action. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors,*

---

[9] There is neither argument nor suggestion by plaintiffs that their claim for declaratory relief merely pleads an alternative theory to the damages causes of action, so as to render it inappropriate to aggregate the value of the declaratory claim with the value of the damages claims. Any such assertion would have been futile. A plain reading of the Complaint reflects no tension between the declaratory judgment claim in Count I (seeking to declare the contracts void) and the fraud, negligence, wantonness, trespass and wrongful foreclosure claims set forth in Counts III through VIII (seeking damages for alleged mistreatment of plaintiffs in connection with entry into and performance of the contracts). By way of example, there is no basis in logic, law or fact why a recovery by plaintiffs on Count VII (which demands damages of up to $74,000 for JWH's alleged trespass on the Hardys' land) or Count VIII (which demands damages of up to $74,000 for WMC's alleged initiation of foreclosure proceedings without required written notice) could not coexist with a plaintiffs' judgment on Count I (which seeks a declaration that the underlying contracts are null and void). As the declaratory claim and damages claims are not simply alternative theories of relief for the same harm, and as plaintiffs have never argued that they are, it is appropriate to aggregate the value of the damages claims with the value of the declaratory judgment claim to ascertain the amount in controversy.

*LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)).[10] The law is clear that "the value of the requested [declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the [declaration] were granted." *Morrison*, 228 F.3d at 1268 (citation omitted). Courts have cautioned, however, that if the value of the relief to the plaintiff is speculative or immeasurable, then it cannot satisfy the amount in controversy requirement as a matter of law. *See Mitchell v. GEICO*, 115 F. Supp.2d 1322, 1327 (M.D. Ala. 2000) (observing that sometimes the full value of requested injunctive or declaratory relief is too speculative and immeasurable to establish the requisite amount in controversy); *Lutz v. Protective Life Ins. Co.*, 328 F. Supp.2d 1350, 1359 (S.D. Fla. 2004) (monetary value of benefit plaintiffs will obtain from requested equitable relief must be sufficiently measurable and certain to satisfy amount in controversy requirement, and cannot be considered if it is not).

There being no quantification in the Complaint of the value of the declaratory relief claim from the Hardys' standpoint, the legal certainty test does not apply. Instead, the Court will apply the more general preponderance test to the valuation of this portion of the case. Under that framework, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated*, 329 F.3d at 807; *see also Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement."). Thus, JWH and WMC, as the parties invoking federal jurisdiction, must show by a preponderance of the evidence that the

---

[10] *See also Smith*, 236 F.3d at 1309 ("For amount in controversy purposes, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.") (citation omitted); *Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership*, 446 F. Supp.2d 1308, 1310 (M.D. Fla. 2006) ("It is well established that in actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. ... Moreover, the rule in the Eleventh Circuit is that the value of the litigation is determined only from the plaintiff's perspective and not the defendant's."); *Lutz*, 328 F. Supp.2d at 1359 ("When calculating the amount in controversy, the value of injunctive or declaratory relief is the value of the object of the litigation that would flow to the plaintiffs if the injunction were granted," which value "is measured from the plaintiff's perspective; the cost to the defendant is irrelevant") (citation omitted).

value of the Hardys' declaratory judgment cause of action is sufficient, when aggregated with that of the damages claims, to trigger the $75,000 jurisdictional threshold.

Defendants have satisfied their burden.  As mentioned *supra*, Count I seeks a declaratory judgment that the building agreement between plaintiffs and JWH (which contemplated a total payment of $73,550 by plaintiffs to JWH upon completion of construction) and the financing agreements between plaintiffs and WMC (which had a principal amount of $99,622 for the mortgage) be deemed null and void.  All parties apparently agree that plaintiffs never paid or owed any money on the JWH construction loan because construction was never completed; therefore, the value of rescinding that contract from plaintiffs' perspective is apparently $0 because they never became indebted on that construction loan.  But plaintiffs were loaned money under the WMC financing agreements.  It is undisputed that WMC has demanded repayment by the Hardys of "the sum of $33,954.80 through May 15, 2006 with per diem charges of $7.51 for every day thereafter."  (Plaintiffs' Brief (doc. 25), at Exh. A.)  By the Court's calculations, then, at the time of removal, WMC claimed that the Hardys owed it $35,118.85 ($33,954.80 + $7.51/diem x 155 days) under the agreement.  Thus, as of the time of removal, the monetary value to the Hardys of a declaration that the financing agreements are null and void would be $35,118.85, because such a declaration would relieve the Hardys of their contractual obligation to repay that amount to WMC.  *See generally Ericsson GE Mobile Communications, Inc. v. Motorola Communications and Electronics, Inc.*, 120 F.3d 216, 220 (11th Cir. 1997) (recognizing that "the immediate financial consequences of the litigation to the plaintiff - in that case, the financial benefit of not having to pay the interest contracted to be charged - may also be considered in calculating the amount in controversy").  The parties' respective briefs on the Motion to Remand reflect their full agreement with such a valuation of Count I.  (*See* Plaintiffs' Brief, at 5-6; Defendants' Brief (doc. 28), at 6-7; Plaintiffs' Reply (doc. 29), at 2.)

    4.  *The Amount in Controversy is Satisfied.*

What we have here, then, are damages claims valued at $74,000 and a declaratory judgment claim valued at just over $35,000.  These figures are properly aggregated to reach the amount in controversy because they represent different categories of relief and are cumulative, rather than alternative, grounds for relief.  Thus, if plaintiffs were to receive a judgment for the full measure of relief they are demanding in this lawsuit, they would receive an award of

damages of $74,000 (excluding costs) from JWH and WMC, jointly and severally, plus declaratory relief that would erase their indebtedness to WMC in an amount exceeding $35,000.[11] Clearly, the amount in controversy as between plaintiffs and WMC exceeds $75,000.

In response to defendants' contention that the damages claim and declaratory relief claim valuations are properly added for purposes of computing the amount in controversy, the Hardys are silent. At most, plaintiffs argue that (a) the value of their damages claims should not be aggregated across those damages claims, but should be viewed as a single $74,000 valuation; and (b) the value to plaintiffs of the declaratory judgment claim, by itself, is less than $75,000. But neither of these arguments confronts the critical point of whether the $74,000 damages valuation is properly aggregated with the $35,000 declaratory judgment valuation. Plaintiffs having failed to address this central point, and the foregoing authorities and rationale favoring aggregation of these distinct categories of claims, the Court finds that aggregation is appropriate. Therefore, even assigning the valuations that plaintiffs themselves use ($74,000 for damages claims, $35,000 for declaratory judgment claim), the amount in controversy exceeds the $75,000 threshold required for jurisdiction to attach under 28 U.S.C. § 1332. The amount in controversy being satisfied, and there being no question that the plaintiffs are in fact of completely diverse citizenship from the defendants, federal subject matter jurisdiction properly lies.

### III.    Conclusion.

For all of the foregoing reasons, plaintiffs' Motion for Remand (doc. 24) and incorporated request for taxation of costs and attorneys' fees are **denied**. It is further **ordered** as

---

[11] The court file confirms that plaintiffs view these remedies as cumulative, rather than alternative. In an April 18, 2007 letter from plaintiffs' counsel to defendants' counsel, plaintiffs offered to accept a $45,000 payment, plus cancellation of the outstanding construction and mortgage agreements, in settlement of this case. (Defendants' Brief, at Exh. 2.) To be sure, this settlement offer is not dispositive of the amount in controversy issue, but it is evidence that is properly considered. *See, e.g., Burns*, 31 F.3d at 1097 (indicating that while a "settlement offer, by itself, may not be determinative, it counts for something"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); *Golden v. Dodge-Markham Co.*, 1 F. Supp.2d 1360, 1364 (M.D. Fla. 1998) (similar). Plaintiffs' April 18 letter plainly reflects plaintiffs' valuation of their claims as being at least $80,000, including both $45,000 in direct monetary payments and the value of the canceled agreements (which is at least $35,000, the amount owed by plaintiffs on the WMC agreement).

follows:

1. To avoid further delays in the prosecution of Gerald Hardy's causes of action against defendant Walter Mortgage Company, as well as all of plaintiff Bonnie Hardy's claims against both defendants, all of which remain pending in this forum, the parties are **ordered** to complete and file their Rule 26(f) Report on these claims as soon as practicable, but not later than **July 13, 2007**. The initial disclosures described in Rule 26(a)(1)(A-D), Fed.R.Civ.P., shall be exchanged by the parties not later than **July 27, 2007**.

2. Plaintiff Gerald Hardy and defendant JWH are **ordered** to exercise diligence in moving forward with arbitration, pursuant to the undersigned's Order (doc. 19) entered on January 18, 2007 compelling arbitration of the claims between them. It is difficult to fathom why, more than five months after arbitration was ordered, no arbitrator has been selected. Future monthly status reports mandated by the January 18 Order must reflect that the parties are working together in good faith to proceed with arbitration in a timely and efficient manner.

DONE and ORDERED this 28th day of June, 2007.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE